IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 2, 2004

## EARL JEFFERSON v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. P-26848   Joseph B. Dailey, Judge

No. W2004-00655-CCA-R3-PC  - Filed March 4, 2005

The petitioner, Earl Jefferson, was convicted by a jury of premeditated first degree murder and sentenced to life imprisonment without the possibility of parole. His conviction was affirmed by this Court on appeal. See State v. Earl T. Jefferson, No. W2000-00608-CCA-R3-CD, 2001 WL 687061, at *5 (Tenn. Crim. App. at Jackson, June 12, 2001) perm. app. denied (Tenn. Oct. 29, 2001). The petitioner's Rule 11 application for permission to appeal to the Tennessee Supreme Court was denied on October 29, 2001. Id. The petitioner then filed a pro se petition for post-conviction relief. After counsel was appointed, an amended petition was filed, alleging that the petitioner received ineffective assistance of counsel at trial and that his right to a speedy trial was denied. The post-conviction court denied the petition after a hearing. Because we determine that the petitioner did receive the effective assistance of counsel and the speedy trial claim has been waived, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. C. MCLIN, JJ., joined.

C. Anne Tipton, Memphis, Tennessee, for the appellant, Earl Jefferson.

Paul G. Summers, Attorney General & Reporter; David E. Coenen, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

The facts supporting the petitioner's underlying conviction were summarized by this Court on direct appeal as follows:

> Erica Brown was the defendant's cousin, and the defendant stayed at her residence from time to time. On July 23, 1997, Brown and her three-year-old daughter were patronizing Comfort Laundry. At approximately 9:45 p.m., the victim, Charles Cook, who lived primarily in his vehicle which was often parked in close proximity to the laundry, entered the laundry. The victim proceeded to Christy White, an employee of the laundry, and requested change for $1.00 in order to purchase a beverage. White provided the victim with change, and he walked toward the vending machine. Before reaching the machine, he stopped and inquired of Brown if he could purchase a drink for her daughter. Brown granted the victim's request, and the victim purchased and delivered a grape soda to Brown's daughter. The victim momentarily talked with the girl, then he exited the building.

> White testified that a couple of minutes after the victim exited the laundry, Brown ran to the counter and stated, "Did you see what that guy did?" White further testified that Brown said

>> [the victim] was down bending on his knees outside the door, the door cracked open, of the laundromat and he was beckoning for her child to come toward him; and when she turned around and saw her little girl walking toward the door and saw him at the door, he backed away.

> White testified that this incident made Brown upset. Brown further stated to White, "[h]e don't [sic] know what he's doing. He's messed up now. I need to make some phone calls." After Brown used the telephone, she warned White, "[d]on't stick your head out the door about 10:30. We're going to come back through spraying." White further testified that her [White's] husband went to the nearby Church's Chicken parking lot, where the victim was located, and told him to never again reenter the laundry.

-2-

Yarico Butler, a former girlfriend of the defendant, testified that she talked with him on the phone concerning his involvement in the murder. She stated that the defendant requested she pick him up because he was in "trouble." The defendant then told her that Erica Brown, the defendant's cousin, came home and informed him of the incident at the laundry and demanded "something [be] done" to the victim. Brown then drove him and an acquaintance to the laundry and waited in the car while they shot the victim. On cross-examination, Butler conceded that she and Erica Brown were having "problems" with each other when the incident occurred, and Butler pled guilty to a charge of harassment of Brown.

Junea Payton, a nurse, testified that on July 23, 1997, she was driving home from work with her mother and saw the victim attempt to flee from two men and fall in the center of Airways Boulevard. She then saw his two assailants kick him while he was on the street. The victim picked himself up and crossed the street. Payton heard a shot, so she turned her vehicle around and proceeded to the victim. By the time Payton returned, the two men were standing over the victim kicking him. She also observed one of the men shoot the victim while the victim was on his side. Payton was unable to positively identify the two men, but testified they had thin builds, and one was approximately 18, while the other was approximately 25. She testified that the younger man actually did the shooting.[1] The two men fled, and she and her mother administered CPR on the victim. The victim died at the scene from a gunshot wound.

Alvin Peppers, of the Memphis Police Department Crime Scene Unit, testified that when he arrived on the scene, the victim's vehicle was running. He further testified that the victim was found at the scene in possession of $258.65.

James Holder, a latent fingerprint examiner with the Memphis Police Department, testified that a palm print lifted from the victim's vehicle matched the defendant's palm print.

The defense offered the testimony of the defendant's grandmother, Juanita Jefferson, who testified that Yarico Butler phoned her from jail and stated that the defendant killed someone. Butler then stated, "[h]e going [sic] to pay for what he done [sic] to me . . . [h]e left me alone." Butler further stated that she and Erica Brown got in a fight, and "it had a whole lot to do with Earl [defendant]." Jefferson further testified that after she advised Butler to "straighten this stuff out" with the defendant, Butler replied, "[n]o, I'm going to hurt both of them anyway I can. I don't care. I'm going to get my revenge."

---

[1] According to the judgment, the defendant was born on December 12, 1975, making him 21 years of age at the time of the offense.

Jefferson, 2001 WL 687061, at *1-2.

After the petitioner's conviction was affirmed by this Court and the Tennessee Supreme Court denied the petitioner's Rule 11 application for permission to appeal, the petitioner filed a pro se petition for post-conviction relief. Counsel was appointed for the appellant and an amended petition for post-conviction relief was filed on March 6, 2003, alleging ineffective assistance of counsel and the denial of the right to a speedy trial.

Evidence at Post-Conviction Hearing

The post-conviction court held a hearing on the petition on December 12, 2003. The petitioner testified that he was arrested for first degree murder in 1997 and was not indicted for the offense until May of 1998, the same month that the trial court appointed an attorney in the public defender's office to represent him. The petitioner claimed that he discussed the case with trial counsel "five or six times" prior to trial and that trial counsel only came to the jail to meet with him "a few times." The petitioner claimed that after "the first three months" he was going to court trial counsel did not "ever come back to see [him]" so he filed a complaint with the Board of Professional Responsibility. The petitioner testified that, after he filed the complaint, trial court provided him with copies of discovery, the preliminary hearing tape, and his statement to the authorities.

The petitioner claimed that trial counsel was deficient in that he did not interview and investigate every person on the witness list. He stated that trial counsel spoke with only his grandmother and Yarico Butler. The petitioner testified that he asked trial counsel to speak with two other witnesses who had knowledge of the crime but the petitioner did not give trial counsel an address or phone number for those witnesses. The petitioner described the relationship between he and trial counsel as "really strained" because trial counsel did not adequately talk with the petitioner about the case. The petitioner stated that he was never able to communicate with trial counsel and provide him with assistance in the representation.

The petitioner then testified regarding the numerous pro se motion he filed while he was represented by trial counsel. He filed a speedy trial motion, a motion to dismiss counsel, and a motion for discovery materials. The petitioner claimed that he asked trial counsel to file these motions and that he wanted trial counsel to "question the evidence" in his case. The petitioner complained that there was no motion to suppress filed and therefore no suppression hearing. The petitioner also stated that he was never informed by trial counsel that a private investigator from the public defender's officer was investigating the case. The petitioner blamed the lack of communication with trial counsel on the fact that "he was probably ticked off at me because I filed that complaint . . . against him with the Professional Board of Responsibility [sic]." The petitioner explained that he filed the complaint because he was "constantly telling [trial counsel] to do certain things, and [trial counsel] was constantly blowing me off." The petitioner also alleged that trial counsel failed to investigate a Crime-Stopper's tip indicating that another suspect committed the crime.

The petitioner admitted that trial counsel requested that he be evaluated for mental problems, but stated that he never received the results of the examination. The petitioner also admitted on cross-examination that he discussed various defense theories and the evidence with trial counsel prior to trial. The petitioner claimed that he told trial counsel he "didn't know what happened" and that he "wasn't even involved in it because . . . [he was] just not guilty."

Trial counsel testified that he was appointed to represent the petitioner on June 9, 1998, and that the petitioner's trial began on November 14, 1999. Trial counsel admitted that he did not review the petitioner's file prior to the post-conviction hearing, but that he remembered the specifics of the case. At the time of petitioner's trial, trial counsel had been practicing law for about twelve (12) years and had previously represented defendants in murder cases. Trial counsel could not specifically remember the number of motions he filed for the petitioner, but was able to recall that he did not file any evidentiary motions on the petitioner's behalf. Trial counsel stated that he requested a mental health evaluation of the petitioner as was his standard practice in cases where he represented a defendant charged with murder, but that he could not remember the specific results of the petitioner's evaluation. He could not say "specifically" if he "had any questions about [the petitioner's] mental health," but remembered that "nothing I had, in . . . [their] conversations, had led . . . [him] to believe that he had a competency issue or an insanity issue." He explained that he filed a motion for discovery, a request for notice of the State's intention to use evidence, and a motion for a mental evaluation of the petitioner. Trial counsel claimed that he did not file any additional pretrial motions on the petitioner's behalf, but that it was not unusual because he had "open-file" discovery and an excellent working relationship with the prosecutor in the case. Trial counsel further explained that there were no suppression issues in the petitioner's case, so a motion to suppress was not warranted.

Trial counsel informed the post-conviction court that he was assisted in the petitioner's case by another attorney from the public defender's office. Trial counsel believed that he and the petitioner had an excellent attorney/client relationship throughout the course of the representation. He explained:

> I thought he was very cooperative. I thought we talked well. I don't remember him filing a complaint with the board, but if he did, it was, I guess - I received so many of those at the time, working in the MVU [the Major Violator's Division] that my personal relationship with him was such that he was a very good client, and I didn't see us having - I mean, never a harsh word was ever spoken between us; aside from that complaint, if it was filed, if I received it, was the only notice I had that he was unhappy with me during the course of my representation.

Trial counsel went on to say that the petitioner presented him with several motions and issue that he wanted to raise prior to trial and that they "talked about each of them" but that he "didn't see any pretrial motions to suppress or any issues that we could raise."

Trial counsel stated that he did not have an investigator look at the petitioner's case because he and co-counsel interviewed the witnesses themselves. To that end, trial counsel interviewed Yarico Butler, the State's eyewitness, and the fingerprint witness. Trial counsel explained that he did not request an expert to analyze the fingerprint evidence in the petitioner's case, but that he had attended a three-hour seminar on fingerprint evidence. Trial counsel testified that he determined prior to trial that he would not cross-examine the fingerprint expert because he "didn't think . . . [he] could discredit him as a witness in his expert testimony . . . [and he] wanted the jury to get the impression that that was not important evidence, and therefore, . . . [he] wasn't going to attack him."

Trial counsel did not remember the petitioner requesting a motion for speedy trial, but felt that "we did get a speedy trial." He explained that, in a first-degree murder case, having a trial a year and a half after the indictment is "speedy." Trial counsel elaborated that no witnesses or evidence was lost during that year and a half.

Trial counsel interviewed the petitioner's grandmother in preparation for the trial and the sentencing hearing even though co-counsel conducted the sentencing hearing. Trial counsel admitted that he should have asked the trial court to instruct the jury on facilitation of first degree murder, but that he did not think of it at the time.

Following the presentation of the evidence, the post-conviction court made the following comments with regard to the length of time between the petitioner's arraignment and trial:

> Just with regard to the length of time between arraignment and trial, . . . [the petitioner] was arraigned in here on June 9th of '98, and the matter was reset for four different report dates, during which time the motions were filed and the mental evaluation was conducted. It was then set for trial - first trial date of May the 10th of '99, and could not be tried on that date. I assume the court was in trial on another case and reset it, then, to the November of '99 date when it was tried . . . . I just say that to - so the record would reflect that it wasn't a situation where . . . the attorneys - prosecutors, defense attorneys, or judge - were sort of dragging their heels in getting the matter in a posture for trial. It was prepared for trial within a matter of four months or so when announced for trial and set for trial.

The post-conviction court took the matter under advisement and issued an order denying the petition for post-conviction relief. The post-conviction court made the following findings:

> [Trial counsel] testified that he had in fact talked to all of the necessary witnesses; made a conscious decision with regard to the fingerprint testimony not to aggressively cross-examine the fingerprint expert and thereby to minimize the importance of that testimony in the eyes of the jury; that he had open file discovery and determined that there were no suppression issues involved in the discovery that he received; and that he had adequately prepared for the sentencing phase of the trial. . . .

Some of the matters complained of by this petitioner, such as the failure to request certain instructions in the jury charge at trial, are matters which have been previously litigated or waived. The remaining matters this Court finds to be wholly without merit. . . . [Trial counsel] was fully prepared to try this case in defense of his client, he did not file a great deal of written motions because a great deal of written motions were not warranted in this case, and he conducted the trial in every regard in an outstanding manner on behalf of his client. That his client was ultimately convicted should not be the gauge by which an attorney's performance is measured. . . . [Trial counsel] had a well thought out defense, aggressively pursued it, and did all that could have reasonably been expected from defense counsel. It is this Court's opinion that his representation of this petitioner was outstanding and fell well within the standards of Baxter v. Rose, 523 S.W.2d 930, and subsequent cases.

On appeal, the petitioner challenges the post-conviction court's dismissal of the petition.

## Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have

been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner argues that trial counsel was ineffective for the following reasons: (1) he failed to establish a sufficient attorney/client relationship with the petitioner; (2) he did not sufficiently investigate the petitioner's case; (3) he did not fully investigate the petitioner's mental health for the sentencing phase of the petitioner's trial; (4) he was not fully prepared for the trial or for the sentencing proceedings; and (5) he did not employ an expert in fingerprint analysis to investigate the State's palm-print evidence. The State argues that the proof at the post-conviction hearing shows that trial counsel "thoroughly prepared for the petitioner's trial by reviewing the full discovery file from the State, interviewing witnesses, and discussing the case at length with the petitioner." Furthermore, the State notes that trial counsel had excellent communication with the petitioner during the proceedings and did not find the petitioner's mental health to be an issue.

## A. Attorney/Client Relationship

The petitioner contends that trial counsel failed to establish a sufficient attorney/client relationship with him prior to trial. Specifically, the appellant claims that the relationship between the two was "really strained" and that even though he received copies of key documents, he was unable to discuss the case fully with trial counsel.

The evidence at the hearing shows that trial counsel believed that he and the petitioner had an excellent relationship. He explained that he thought the petitioner was "very cooperative" and a "good client." Trial counsel testified that the petitioner presented him with several motions and issues that he wanted to raise prior to trial and that they "talked about each of them." The petitioner himself admitted that he received copies of the discovery and that trial counsel informed him of "the

charges and the evidence and everything." The petitioner also admitted that he received a copy of the preliminary hearing tape and a copy of the statement that he made to the police.

In denying the petition, the trial court gave credibility to the testimony of trial counsel. As stated above, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trial of fact" and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The evidence does not preponderate against the trial court's credibility determination herein. The petitioner has failed to prove by clear and convincing evidence that trial counsel was ineffective in the attorney/client relationship. This issue is without merit.

## B. Investigation of the Case

The petitioner also claims that trial counsel did not adequately investigate the petitioner's case prior to trial and before sentencing. Specifically, the petitioner complains that trial counsel did not employ an investigator, did not interview all of the witnesses and did not fully investigate the petitioner's mental health.

At the post-conviction hearing, trial counsel testified that he had "open-file discovery" with the prosecutor from the petitioner's arraignment forward. Further, after reviewing the discovery, trial counsel explained that there were no suppression issues in the petitioner's case that warranted a motion. Trial counsel interviewed the State's eye-witness, the fingerprint expert, and the petitioner's grandmother. Trial counsel also sought a mental evaluation of the petitioner because that is his standard practice in cases involving first degree murder. He could not "say that . . . [he] had any questions about [the petitioner's] mental health . . . [because] nothing . . . [he] had, in . . . [their] conversations, had led . . . [him] to believe [the petitioner] had a competency issue or an insanity issue." Trial counsel informed the post-conviction court that co-counsel had conducted the sentencing phase of the trial, but the petitioner failed to call co-counsel to testify at the post-conviction hearing. Thus, there is no evidence in the record to indicate the extent of the preparation for the sentencing phase. After a review of the record, we cannot determine that the evidence preponderates against the post-conviction court's determination that trial counsel had talked to all of the necessary witnesses, had open-file discovery, had determined that there were no suppression issues, and had adequately prepared for the sentencing phase of the trial. The petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient in investigating the case. This issue is without merit.

## C. Cross-Examination of Fingerprint Expert

Lastly, the petitioner complains that trial counsel failed to enlist the services of a fingerprint expert to rebut the State's fingerprint expert and attack the State's palm-print evidence. Specifically, the petitioner claims that the representation was deficient and he was prejudiced because the only evidence linking him to the crime was a palm print found on the hood of the victim's vehicle. The

petitioner asserts that had trial counsel adequately handled this issue, it could have "greatly impacted the outcome of this proceeding."

At the post-conviction hearing, trial counsel explained his trial strategy. He stated that he decided prior to trial not to vigorously cross-examine the fingerprint expert because he "didn't think that . . . [he] could discredit . . . [the expert] as a witness in his expert testimony . . . [he] wanted the jury to get the impression that that was not important evidence, and therefore, . . . [he] wasn't going to attack him." Further, trial counsel testified that he had attended a three-hour seminar on fingerprint evidence. It is not this Court's function to "'second guess' tactical and strategic choices pertaining to defense matters or to measure a defense attorney's representation by '20-20 hindsight.'" Henley, 960 S.W.2d at 579 (quoting Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)). The petitioner again failed to prove ineffective assistance of counsel by clear and convincing evidence. This issue is without merit.

Accordingly, we determine that trial counsel's representation of the petitioner prior to trial and during the trial fell well within the "range of competence demanded of attorneys in criminal cases." Baxter, 523 S.W.2d at 936. The petitioner failed to show that he received ineffective assistance of counsel.

## Speedy Trial

The petitioner alleges that he was denied a speedy trial which created "irreversible prejudice." Specifically, the petitioner alleges that he was arrested in 1997, was not indicted until May 28, 1998, and was not tried until November of 1999. The State counters that the petitioner has waived the issue for failure to bring it to the court's attention prior to trial and failure to raise the issue on direct appeal. In the alternative, the State argues that the petitioner was not denied a speedy trial.

The petitioner, as indicated by the State, failed to raise this issue on direct appeal. Tennessee Code Annotated section 40-30-206 governs the concept of waiver:

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Tenn. Code Ann. § 40-30-206(g). Because the claim of a speedy trial violation was available on direct appeal, and not presented, the issue has been waived.

<u>Conclusion</u>

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE